No. 69,233

ERNEST M. GRUBE, *Appellee*, v. UNION PACIFIC RAILROAD
COMPANY, *Appellant*.

(886 P.2d 845)

Opinion filed December 16, 1994.

*Michael B. Buser*, of Shook, Hardy & Bacon P. C., of Overland Park, argued the cause, and *Rebecca J. Lubbers*, of the same firm, was with him on the briefs for appellant.

*Laurence M. Jarvis*, of Laurence M. Jarvis, Chartered, of Kansas City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

DAVIS, J.: This case deals with the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.* (1988), (FELA) and involves a question of whether a railroad employee may recover damages against employer railroad for negligent infliction of emotional distress.

At the time this case was argued, the question had not been resolved by the United States Supreme Court. Because of the conflict among the federal circuit courts of appeal concerning the threshold standard which must be met by the plaintiffs bringing claims for negligent infliction of emotional distress under FELA, the United States Supreme Court granted *certiorari* in two cases arising in the Third Circuit Court of Appeals: *Gottshall v. Consolidated Rail Corp.*, 988 F.2d 355 (3d Cir.), *cert. granted* 126 L. Ed. 2d 247 (1993); *Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90 (3d Cir.), *cert. granted* 126 L. Ed. 2d 247 (1993).

After the arguments in this case, the United States Supreme Court on June 24, 1994, rendered its decision in *Consolidated Rail Corporation v. Gottshall*, 512 U.S. \_\_\_, 129 L. Ed. 2d 427, 114 S. Ct. 2396 (1994). On July 7, 1994, we entered an order offering the parties an opportunity to address the following questions:

"(1) Does the United States Supreme Court decision [in *Gottshall*] apply to this case?

"(2) Assuming the United States Supreme Court decision applies, would the record in this case permit this court to resolve the issue of whether plaintiff is within the 'zone of danger' standard?

"(3) Assuming the United States Supreme Court decision applies, must this case be reversed and remanded for a new trial under the standard announced by the United States Supreme Court?

"(4) Any other questions deemed appropriate by the parties."

The parties responded with supplemental briefs. Both parties agree and we conclude that the United States Supreme Court decision in *Gottshall* governs the disposition of this case. We will discuss the parties' further contentions concerning *Gottshall* below.

The facts are not in dispute. Although the briefs and oral arguments at times suggest otherwise, the factual findings of the trial court have not been appealed. Ernest A. Grube was employed by Union Pacific Railroad Company (Union Pacific). This case arose when the train he was operating as engineer collided with an automobile trapped upon a railroad crossing outside Lawrence. One of the occupants in the automobile died and two others suffered serious injury as a result of the collision. The decedent's heirs and the injured parties sued Grube and Union Pacific. These claims were settled and are not at issue in this appeal.

Grube filed a cross-claim against his employer, seeking damages for negligent infliction of emotional injury with accompanying physical manifestations. Grube saw the trapped car before the collision. He remembers the driver of the vehicle, a young man, looking at the approaching engine with an expression of shock, fright, or fear. Grube sustained no physical injury as a result of the collision, but when the train eventually stopped, he ran back to the accident scene attempting to render aid. He felt the pulse of the driver and touched the deceased, attempting to find a pulse. At the accident scene, Grube exhibited physical manifestations of his emotional distress; he became physically ill and, as he testified, he "threw up . . . [and] that's when it started hitting me." Grube further testified that he had no thoughts of fear of personal injury at the time of the accident but was reacting and not thinking at the time and merely doing his job. The other employee in the cab of the engine with Grube, however, ducked down before impact out of fear of possible explosion at the time of impact.

At the close of Grube's evidence, Union Pacific moved for a directed verdict, claiming that Grube could not recover damages

for infliction of emotional distress under FELA absent physical injuries. The trial court took this motion under advisement. Union Pacific renewed its motion at the close of all evidence. Again, the trial court took the matter under advisement. The jury returned a verdict for Grube, awarding him $121,500 in damages.

Union Pacific moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied this motion except for the question of whether Grube could recover for emotional distress absent physical injury. Ultimately the court ruled for Grube, stating in part:

"[T]here's no question that plaintiff suffered significant mental distress as a result of the accident and subsequent litigation brought against him. With such proof, why should he not recover because he suffered no physical injury (physical injury/impact theory) or did not himself experience fear for his own safety at the time of the accident (zone of danger theory)?"

The court appeared to base its holding primarily on the evidence that the plaintiff played "an active participatory role in the tragedy." The court thus denied defendant's motions to dismiss plaintiff's claims "for purely emotional injuries."

Section 1 of FELA provides in pertinent part:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury [or death] while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

Kansas law is clear in its requirements that a plaintiff demonstrate some physical impact/injury in order to recover for negligent inflection of emotional distress. *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032 (1990); *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988). The United States Supreme Court has made clear, however, that federal common law governs such claims under FELA. In *Urie v. Thompson*, 337 U.S. 163, 174, 93 L. Ed. 1282, 69 S. Ct. 1018 (1949), the Court held: "What constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept gov-

erns." Later in *Atchison, T. & S. F. R. Co. v. Buell*, 480 U.S. 557, 568, 94 L. Ed. 2d 563, 107 S. Ct. 1410 (1987), the Court declined to decide whether the plaintiff could recover under FELA for his emotional injuries but stated:

"The question whether 'emotional injury' is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common-law developments, see *Urie v. Thompson*, 337 U.S., at 174, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity."

Whether a plaintiff may recover damages from his or her employer on the basis of negligent infliction of emotional distress under FELA has been resolved by the United States Supreme Court in *Consolidated Rail Corporation v. Gottshall*, 129 L. Ed. 2d 427. For a history of the conflict among federal circuit courts of appeal on this question prior to its resolution by the United States Supreme Court, see *Gottshall v. Consolidated Rail Corp.*, 988 F.2d at 362-65.

*Gottshall* is a consolidated case involving the claims of James Gottshall and Alan Carlisle, both of whom brought suits under FELA against their former employer, Consolidated Rail Corporation (Conrail). Gottshall was a member of a crew working in extremely hot and humid conditions. Gottshall's friend, Johns, who suffered from a heart condition, collapsed while working. Once Johns was revived, the men were ordered to stop assisting Johns and get back to work. Five minutes later, Johns collapsed a second time. Gottshall performed CPR on Johns for an extended period of time. Emergency response was delayed due to an inoperative radio because Conrail had taken the base station off the air for repairs. Johns died. The paramedics covered the body with a sheet and ordered it be left there until the coroner arrived. Meanwhile, the crew, including Gottshall, was ordered to return to work, within sight of Johns' covered body. Gottshall became agitated and preoccupied with the events surrounding Johns' death. Gottshall suffered nausea, insomnia, repetitive nightmares, psychiatric problems, weight loss, and anxiety. The district court

granted Conrail's motion for summary judgment, holding that FELA did not provide a remedy for Gottshall's emotional injuries. A divided panel of the United States Court of Appeals reversed and remanded for trial. Conrail then appealed. 129 L. Ed. 2d at 435-36.

Alan Carlisle began working as a train dispatcher for Conrail in 1976. In this position, he was responsible for insuring the safe and timely movement of passengers and cargo. Reductions in Conrail's work force required Carlisle to take on additional duties and to work long hours. Carlisle and his fellow dispatchers frequently complained about safety concerns, the high level of stress in their jobs, and poor working conditions. In 1988, Carlisle became trainmaster in the South Philadelphia yards. With this promotion came additional responsibilities which forced him to work erratic hours. Carlisle began to experience insomnia, headaches, depression, and weight loss. After an extended period of time during which he was required to work 12- to 15-hour shifts for weeks at a time, Carlisle suffered a nervous breakdown. In the suit under FELA, the jury awarded Carlisle $386,500 in damages. 129 L. Ed. 2d at 437-38.

In *Gottshall*, the United States Supreme Court remanded Gottshall's case for reconsideration under the zone of danger test. The Court concluded that the question of whether Gottshall met the requirements of the zone of danger test was not adequately briefed or argued before the Court. The Court remanded Carlisle's case with instructions to enter judgment for Conrail. The Court held that in the work-stress-related claim, Carlisle did not fall within the common-law conception of the zone of danger, and without any support in the common law for such a claim, judgment should be entered for Conrail. 129 L. Ed. 2d at 449.

In *Gottshall*, the Supreme Court noted:

"Three major limiting tests for evaluating claims alleging negligent infliction of emotional distress have developed in the common law. The first of these has come to be known as the 'physical impact' test. It originated a century ago in some of the first cases recognizing recovery for negligently inflicted emotional distress. . . . Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defen-

dant's conduct. Most jurisdictions have abandoned this test, but at least five States continue to adhere to it.

"The second test has come to be referred to as the 'zone of danger' test. It came into use at roughly the same time as the physical impact test, and had been adopted by several jurisdictions at the time FELA was enacted. [Citations omitted.] Perhaps based on the realization that 'a near miss may be as frightening as a direct hit,' *Pearson*, U. Fla. L. Rev., at 488, the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, 'those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.' *Id.*, at 489. The zone of danger test currently is followed in 14 jurisdictions.

"The third prominent limiting test is the 'relative bystander' test, which was first enunciated in *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912 (1968). . . . The courts of nearly half the States now allow bystanders outside of the zone of danger to obtain recovery in certain circumstances for emotional distress brought on by witnessing the injury or death of a third party (who typically must be a close relative of the bystander) that is caused by the defendant's negligence." 129 L. Ed. 2d at 442-43.

*Gottshall* discusses the concern the courts have experienced with the recognition of a cause of action for emotional injury when not related to any physical trauma. One such concern is that these claims "may inundate judicial resources with a flood of relatively trivial claims, many of which may be imagined or falsified, and that liability may be imposed for highly remote consequences of a negligent act." 129 L. Ed. 2d at 441.

A more significant concern was that "[e]motional injuries may occur far removed in time and space from the negligent conduct that triggered them." 129 L. Ed. 2d at 441. There are no necessary limits on the number of persons who might suffer emotional injury because of the negligent act. Thus, many courts note that recognition of this cause of action raises the real possibility of "nearly infinite and unpredictable liability for defendants." 129 L. Ed. 2d at 442.

Recognizing that FELA's central focus is on physical perils, that FELA was intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work, that by imposing liability FELA meant to encourage employers to improve safety measures to avoid claims, and that FELA refers simply to "injury" which may encompass both physical and emotional

injury, the Court concluded that the zone of danger test best harmonized all concerns:

"We believe that allowing recovery for negligently inflicted emotional injury as provided for under the zone of danger test best harmonizes these considerations. *Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. Railroad employees thus will be able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact.* This rule will further Congress' goal in enacting the statute of alleviating the physical dangers of railroading." (Emphasis added.) 129 L. Ed. 2d at 448.

In Grube's case, the trial court considered but rejected the zone of danger test because Grube did not himself experience fear for his own safety. We have searched the record and find no evidence to support Grube's contention that he feared for his own personal safety. His own testimony concerning the collision establishes that just before, and at the time of, impact he experienced no fear for his own personal safety.

Grube acknowledges that he expressed no fear at the time of the collision, but argues that the zone of danger test adopted by the Supreme Court does not require a contemporaneous expression of such fear. He points out that many times people react to dangerous situations automatically and only later come to the realization of the danger they were in at the time of the peril. This point is well taken, and we do not believe that the zone of danger test adopted in *Gottshall* necessarily requires that there be fear for one's personal safety expressed contemporaneously with the collision. However, fear for one's safety is an essential element of the zone of danger test and must be expressed at or near the time of the danger in order for plaintiff to prevail in the action.

The problem with Grube's position is that the record fails to establish that Grube expressed fear for his own personal safety at any time. His fear was for the youth whose face he saw before impact and whose face he touched afterwards. As a result of this fear, Grube became physically ill immediately after the collision. There is ample evidence to establish that Grube experienced his severe emotional problems because of his concern about the law-

suit and his involvement in an accident in which a man died and others were injured. The trial court made note of this:

"THE COURT: Well, the problem with zone of danger, there is no testimony that Mr. Grube ever—to me that theory says that you are allowed recovery if you are in a situation and become upset because you perceive yourself to be in imminent fear of injury to yourself, danger to yourself, that sort of thing. There is no testimony to that effect.

"MR. JARVIS: That's right, Judge. I think what you have to look at is—and that's what the *Buell* case is saying—the facts of the individual case. Mr. Grube is not saying that I became emotionally upset later on and have lost my job over the road or I cut back because I feared for my own safety.

"THE COURT: That's my point."

In adopting the zone of danger test, *Gottshall* notes that "[t]he zone of danger test presently is followed by 14 jurisdictions." 129 L. Ed. 2d at 447. Footnote 9 sets forth cases from each jurisdiction employing a zone of danger test. 129 L. Ed. 2d at 443 n.9. Upon reviewing these cases it becomes apparent that the zone of danger test is not uniformly applied in those 14 jurisdictions. We agree with Grube's contentions that a plaintiff need not feel contemporaneous fear for his personal safety as was required in *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 457 N.E.2d 1 (1983), as limited by *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020, 1023 (7th Cir. 1989). We also agree that the entire damages may include emotional distress resulting from concern or fear for the safety of another person as long as plaintiff establishes that he or she suffered imminent apprehension of physical harm. See *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979). In both instances, however, essential elements for recovery under the zone of danger test are that plaintiff be within the zone of danger and suffer imminent apprehension of physical harm which causes or contributes to the emotional injury. In this case, Grube failed to establish that he feared for his personal safety at any time. His emotional injury did not result from fear of his personal safety but rather from his experiences relating to others affected by the impact.

Grube nevertheless argues that the physical impact he experienced at the point of collision brings him within the zone of danger test. He relies upon the following statement in *Gottshall*:

"Perhaps based on the realization that 'a near miss may be as frightening as a direct hit,' Pearson, U. Fla. L. Rev., at 488, the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, 'those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.' *Id.*, at 489." 129 L. Ed. 2d at 443.

As we understand Grube's argument, he contends that he was thrown against the console in the cab of the engine at the time of the collision and sustained physical impact. Thus, according to his contention, he falls within the physical impact test as well as within the zone of danger test because of the physical impact he sustained.

Grube was pushed against the console of the engine because of the emergency braking of the train at the time of the collision. However as Union Pacific points out, there was no evidence that this action caused Grube any physical or emotional injuries. He suffered no bruises or abrasions as a result of the impact. The lack of injury was conceded at trial:

"THE COURT: Excuse me. Let me—before we go further on that point, let me back up for a minute. When you talk about this impact, are you saying there was impact with what?

"MR. JARVIS: With the console. With part of the interior of the engine of that train. Just like there would be impact with the steering wheel if you were in a car.

"THE COURT: Except that impact didn't cause any injury, did it?

"MR. JARVIS: I don't believe so. He felt it. But personal injury, even temporary injury, no."

"THE COURT: You are not suggesting he threw up because he was thrown against the wall?

"MR. JARVIS: He was thrown against the console.

"THE COURT: He threw up because of being upset at what he saw. In my mind that's emotional, mental disease.

"MR. JARVIS: It is emotional accompanying the mental is what we're saying.

"THE COURT: All right."

In its decision the trial court found that, as a result of the collision, Grube was thrown against the console in the engine cab but that he suffered no physical injuries. In the absence of any evidence of fear for his own personal safety, the fact that Grube

was thrown against the console is not sufficient to bring him within the terms of the zone of danger test announced in *Gottshall*. Physical impact under the zone of danger test announced in *Gottshall* contemplates an impact relating to the resulting emotional distress. Grube testified that he had no fear for his personal safety and that the impact he experienced did not cause his physical injury nor did it have any effect on his resulting severe emotional distress.

Grube also seeks to justify recovery based upon the physical impact test. He relies upon the following language in *Gottshall*:

"Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct. Most jurisdictions have abandoned this test, but at least five States continue to adhere to it." 129 L. Ed. 2d at 442 n.7.

Kansas is one of those jurisdictions cited by the Supreme Court in footnote 7. In the case of *Anderson v. Scheffler*, 242 Kan. at 860, we said that there may be no recovery in Kansas for emotional distress, unless that distress results from "physical impact", an actual physical injury to the plaintiff. In *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983), we said that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it results from physical injury to the plaintiff.

Other states referenced in footnote 7 which adhere to the physical impact test have also held that the impact which supports a claim for emotional distress must result in physical injury. See *OB-GYN Assoc. v. Littleton*, 259 Ga. 663, 666, 386 S.E.2d 146 (1989); *Hammond v. Central Lane Communications Center*, 312 Or. 17, 25, 816 P.2d 593 (1991). Kentucky has held that the physical contact may be slight but that the resulting emotional injury must be the direct result of the contact. *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980). Indiana, on the other hand, has ruled that while the impact must cause physical injury, the resulting emotional distress need not result from the injury. *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). Under any of these tests, Grube could not recover because he sustained no physical

injury from the impact and because his emotional distress did not result from any impact/injury suffered by him.

Finally, Grube argues that if there is a requirement that a plaintiff must show fear for his own personal safety to recover, we should remand for a finding on this limited issue as the Supreme Court did in *Gottshall*. Gottshall asserted that he would in fact meet the requirements of the zone of danger test. The Court noted that the question was not adequately briefed or argued and therefore believed it best "to allow the Third Circuit to consider the question in the first instance in light of relevant common-law precedent." 129 L. Ed. 2d at 449. Unlike *Gottshall*, the trial court in this case specifically considered the zone of danger test and found no evidence that plaintiff experienced any fear for his personal safety at any time. We have searched the record and find no evidence that Grube experienced fear for his own safety at any time. As indicated earlier in this opinion, the factual findings of the trial court in this case have not been appealed.

Unlike *Gottshall*, the parties in this case were given additional opportunity to brief the precise issue we are asked to resolve. They have by way of supplemental briefs argued their respective contentions involving application of the zone of danger test to the facts of this case. In our opinion, it would serve no useful purpose to remand to the trial court for further consideration. The facts of this case establish that Grube failed to establish an essential element of the zone of danger test, *viz.*, that he at any time feared for his own personal safety. We therefore reverse the judgment of the trial court and enter judgment for the defendant, Union Pacific.

Reversed.

LOCKETT, J., concurring and dissenting: I concur with the majority's analysis and conclusion that under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.* (1988), the essential elements for recovery under the zone of danger test are that a plaintiff be within the zone of danger and suffer imminent apprehension of physical harm which causes or contributes to the emotional injury. I dissent from the majority's finding that (1) the physical impact

which occurred did not cause an injury or have an effect on this plaintiff's resulting emotional distress and (2) there was evidence that established that this plaintiff experienced no fear for his personal safety.

I agree that the general rule in Kansas is that for a plaintiff to recover for emotional distress there must be an impact accompanied by or which results in physical injury. *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988). The plaintiff testified that he was thrown against the console in the engine's cab when the engine's cab struck the car stalled on the tracks. The majority disregards this statement of the evidence and concludes the plaintiff was pushed against the console of the engine's cab because of the emergency braking of the train rather than the collision. The majority then states that because plaintiff suffered no observable bruises or abrasions as a result of the impact, he suffered no injury. Without citing any authority, the majority concludes that to recover for emotional distress caused by a physical impact, the injury sustained must be visible.

The majority concedes that the plaintiff was within the zone of danger. It concludes that the plaintiff did not suffer imminent apprehension of physical harm which caused or contributed to the emotional injury. The majority searched the record to discover if the plaintiff experienced fear for his safety at any time. It implies that under the zone of danger test, a coward can recover for severe emotional distress, but the person who does not express fear at the time of the danger and attempts to avoid the danger or diminish the damage cannot recover because he or she did not express fear at the time of danger. That is contrary to our decision in *State v. Hacker*, 197 Kan. 712, 421 P.2d 40 (1966), *cert. denied* 386 U.S. 967 (1967).

In *Hacker*, a victim of a robbery testified that he was not afraid when he was robbed. The *Hacker* court noted that one of the essential elements of robbery, where there is no violence to the victim, requires putting the victim in fear of some immediate injury to his person. The *Hacker* court observed there was no exact standard by which to determine when an unlawful taking has been accompanied by putting the victim in fear. It concluded it was

only necessary to show that the circumstances were such as to cause a reasonable person to apprehend danger, and that the victim could be reasonably expected to give up property in order to protect him or herself. It noted that a causal relationship must be established between the act of the defendant and the surrender of the property by the victim. 197 Kan. at 716-17.

In this case, it is for the trier of fact to determine if a reasonable person would have apprehended fear and whether that fear caused the resulting emotional distress. This court should not recognize the right of one to recover for emotional distress, set out the requirements for the injured plaintiff to recover, and then search the record and weigh the evidence to see if the injured party presented sufficient evidence necessitated by the new rule. Because there are issues to be resolved and evidence that must be weighed by the trier of fact, this matter should be remanded for a new trial.

ABBOTT, J., joins in the foregoing concurring and dissenting opinion.