*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES R. LUKOWSKI and LESTER J. BLAUVELT,
　　　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

CSX TRANSPORTATION, INC.; ESTATE OF JOHN D.
REESE; and MAURA GOSSARD REESE, Individually
and as Administrator of the Estate of John D. Reese,
　　　　　　　　　　*Defendants-Appellees.*

No. 04-4141

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 03-07031; 03-07032—James G. Carr, Chief District Judge.

Argued: June 7, 2005

Decided and Filed: July 19, 2005

Before: CLAY and SUTTON, Circuit Judges; O'MEARA, District Judge.[*]

---

## COUNSEL

**ARGUED:** Steven P. Garmisa, HOEY & FARINA, Chicago, Illinois, for Appellants. Richard F. Ellenberger, ANSPACH MEEKS ELLENBERGER LLP, Toledo, Ohio, Mark J. Metusalem, NATIONWIDE INSURANCE COMPANY, Toledo, Ohio, for Appellees. **ON BRIEF:** Steven P. Garmisa, James T. Foley, HOEY & FARINA, Chicago, Illinois, for Appellants. Richard F. Ellenberger, Garrick O. White, ANSPACH MEEKS ELLENBERGER LLP, Toledo, Ohio, Mark J. Metusalem, NATIONWIDE INSURANCE COMPANY, Toledo, Ohio, for Appellees.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiffs James R. Lukowski and Lester J. Blauvelt appeal from the district court's grant of summary judgment to Defendants CSX Transportation, Inc., the Estate of John D. Reese, and Maura Gossard Reese as the Administrator of the Estate of John D. Reese, in this tort action arising from a collision between a train and a passenger automobile, brought pursuant

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and Ohio common law. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I.    BACKGROUND

At all times relevant to this lawsuit, Plaintiffs were employees of CSX Transportation, Inc. ("CSXT").  Around 4:00 p.m. on July 16, 2000, Lukowski was the conductor/brakeman, and Blauvelt the engineer, on a train heading west through Allen County, Ohio.  The train approached an "unguarded" crossing at Rumbaugh Road, traveling at a speed of approximately 50 miles per hour, with its whistle blowing and headlights and ditch lights operating properly.[1]  There were some tree branches and vegetation next to or alongside the track that obstructed the train crew's view of the crossing until shortly before the train was about to pass across the road.  Right before the train went through the crossing, Blauvelt saw a truck between three and five feet from the tracks, but at that point it was too late for him to stop the train.  Similarly, Lukowski saw "a blotch of white" as the train approached the crossing, but was not immediately able to tell that the blotch was a truck.

The train and the truck collided as both attempted to go through the crossing at the same time.  During the collision, Blauvelt and Lukowski were jostled around inside the train, but neither was thrown from his seat, and the train did not derail.  As the train came to a stop, Blauvelt made an emergency call to report the accident, and sent Lukowski outside the train to investigate.  When Lukowski walked back to the crossing, he saw the dead body of the driver of the truck, John Reese ("Reese").  Soon afterward, having not heard anything from Lukowski, Blauvelt also went back to the crossing, and also saw Reese's body.

Both Blauvelt and Lukowski claim to suffer from severe post-traumatic stress disorder as a result of witnessing Reese's body after the accident.  It is undisputed that Lukowski was unable to return to work for about seven months following the accident, and that when he did return, he was assigned to a yard job because he feared another accident.  Blauvelt was also unable to return to work for several months, but he eventually came back as an emergency call center operator.  In August 2001, Blauvelt had to stop working entirely due to increasing anxiety and emotional problems.

Tests performed after the accident showed that Reese had a blood alcohol level of .095, and nine empty beer cans were found inside the cab of the truck during a post-accident inventory search.[2]  Plaintiffs allege, and Defendants do not dispute, that Reese violated a number of Ohio traffic laws in proceeding through the rail crossing without stopping and looking for a train. Plaintiffs filed the instant lawsuit on July 15, 2002, seeking damages for their emotional injuries. Plaintiffs alleged claims against CSXT under FELA, and Ohio common law claims against the Estate of John D. Reese ("Reese Estate") and Reese's widow, Maura Reese, both individually and as the Administrator of the Reese Estate.[3]  Specifically, Plaintiffs claimed that their emotional injuries were a direct and proximate result of Reese's negligence, and, additionally, that Maura

---

[1]An "unguarded" crossing is one in which cautionary signs, a stop line on the road, and standard crossbucks are visible as one approaches the crossing; however, the lighted, motorized gates that are common in busy and heavily populated areas were not installed at the Rumbaugh Road crossing.

[2]In Ohio at the time of the accident, the legal limit for driving under the influence of alcohol was .10.  Ohio has since amended the law, and the legal limit is now .08.  *See* Ohio Rev. Code § 4511.19 (A)(1)(d).

[3]Jurisdiction against CSXT is premised on federal question jurisdiction under 28 U.S.C. § 1331.  Plaintiffs are citizens of Indiana, the Reese Estate and Maura Reese are citizens of Ohio, and CSXT is a Virginia corporation with its principal place of business in Jacksonville, Florida; therefore, there is complete diversity of citizenship between the parties, and jurisdiction against the Reese Estate and Maura Reese is premised on 28 U.S.C. § 1332.

Reese was individually liable for the accident because she negligently entrusted her husband with the truck when she knew or should have known that he would operate it under the influence of alcohol. Plaintiffs claimed that CSXT was at fault for failing to properly maintain vegetation and trees along the right-of-way, which obstructed Plaintiffs' view of the Rumbaugh Road crossing until it was too late for them to safely stop the train.

This suit was initially filed in United States District Court for the Northern District of Indiana, but venue was transferred to the Northern District of Ohio in January 2003. After the transfer of venue, Defendants moved for summary judgment. Without addressing the merits of Plaintiffs' claims against the Reese Estate and Maura Reese as Administrator, the district court found that the Estate and Mrs. Reese were entitled to summary judgment because Plaintiffs failed to follow the estate claim notification procedures set forth in Ohio Rev. Code § 2117.06. The court also granted summary judgment to Maura Reese on the merits of the negligent entrustment claim against her, finding that there was no genuine issue of material fact on the question of whether Mrs. Reese knew or should have known that her husband was intoxicated on the afternoon of the accident, or that he had a propensity to drive while intoxicated. Finally, the court granted CSXT's motion for summary judgment, holding that under FELA, a plaintiff may only recover for emotional injuries that result from a fear of physical injury to his or her own person. *See Lukowski v. CSX Transp., Inc.*, 332 F. Supp. 2d 1065, 1068 (N.D. Ohio 2004). The court found that rather than making a claim that their emotional distress was a result of their fear for personal physical injury, Plaintiffs claim that they suffered emotional distress due to a fear for Reese's physical safety. *Id.* ("Plaintiffs have neither alleged nor shown that the emotional consequences of the accident resulted from any apprehension of possible injuries to themselves. On the contrary, they attribute the disabling consequences of the accident to what they saw in its aftermath, and a sense of guilt at not having been able to see the truck and stop the train."). According to the district court, such emotional distress is not cognizable under FELA in light of the Supreme Court's decision in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). *Id.* at 1068-69. Plaintiffs now appeal the district court's grant of summary judgment to CSXT, the Reese Estate, and Maura Reese as Administrator of the estate only.

## II.     DISCUSSION

### A.     Emotional Distress Claims Under FELA

This case presents a matter of first impression in this circuit: whether a plaintiff who is within the "zone of danger" may recover damages under FELA for emotional distress suffered not as a result of fear for personal physical safety, but rather, as a result of witnessing a third party's peril. The district court answered that question in the negative, but Plaintiffs argue that because they were in the zone of danger, they are automatically entitled to recover for any emotional injuries resulting from CSXT's negligence, regardless of the cause of the emotional distress. We review the district court's grant of summary judgment *de novo*. *Moorer v. Baptist Mem. Hosp.*, 398 F.3d 469, 486 (6th Cir. 2005). Additionally, as a purely legal issue, we review the district court's interpretation of FELA *de novo*. *See, e.g.*, *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 985 (6th Cir. 2004); *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003).

The starting point for any analysis of emotional distress claims under FELA is the Supreme Court's decision in *Gottshall*. In *Gottshall*, the Court held that in order to recover emotional distress damages under FELA, a plaintiff must demonstrate that he or she was within the "zone of danger" of physical impact. *Gottshall*, 512 U.S. at 555-56. This is so because Congress' purpose in adopting FELA was "to provide compensation for the injuries and deaths caused by the physical dangers of railroad work." *Id.* at 555. Thus, "FELA was (and is) aimed at ensuring 'the security of the person from physical invasions or menaces.'" *Id.* at 555-56 (quoting *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 813 (7th Cir.), *cert. denied*, 480 U.S. 945 (1987)). However, even though the goal

of FELA is compensation for physical injuries, the statute "refers simply to 'injury,' which may encompass both physical and emotional injury." *Id.* at 556. Balancing the statute's goal and its broad language, the common law "zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, those within the zone of danger of physical impact can recover for fright, and those outside of it cannot." *Id.* at 547-48 (quotation and citation omitted); *see Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 594 (6th Cir. 1998) (*en banc*) (explaining that *Gottshall* "held that claims essentially based on infliction of emotional distress must meet the common law 'zone of danger' rule, requiring that a plaintiff making such a claim suffer a physical impact, or be in the zone of danger of suffering such an impact"). The *Gottshall* Court summed up its holding as follows:

> Under this test, a worker within the zone of danger of physical impact will be able to recover for *emotional injury caused by fear of physical injury to himself*, whereas a worker outside the zone will not. Railroad employees will thus be able to recover for injuries--physical and emotional--caused by the negligent conduct of their employers that threatens them imminently with physical impact. This rule will further Congress' goal in enacting [FELA] of alleviating the physical dangers of railroading.

*Gottshall*, 512 U.S. at 556 (emphasis added).

The district court concluded that Plaintiffs were at least arguably within the zone of danger, a conclusion that we assume to be correct. Plaintiffs were operating the train during the collision, and they were jostled around in their seats, which caused minor physical injury. Thus, Plaintiffs sustained a slight physical impact, and due to the nature of the accident, they were also placed in immediate risk of physical harm. However, because *Gottshall* plainly uses the phrase "emotional injury caused by physical injury to himself," the district court concluded that recovery is limited to emotional distress damages suffered as a result of a fear for one's own physical safety.

While the language of *Gottshall* is apparently clear in its limitation of emotional distress damages, there is a dearth of case law discussing the issue presented here. Like this Court, no other Circuit has addressed the question of whether emotional distress damages under FELA must be tied to a fear for personal physical safety. On remand from the Supreme Court in *Gottshall*, the Third Circuit specifically left the question open. *See Gottshall v. Consol. Rail Corp.*, 56 F.3d 530, 535 n.7 (3d Cir. 1995) (noting that "it is not clear whether a plaintiff would be required, in a FELA action for negligent infliction of emotional distress, to fear physical injury to himself as a prima facie element or whether the lack of such fear would merely be considered in determining damages"); *accord Bloom v. Consol. Rail Corp.*, 41 F.3d 911, 915 n.4 (3d Cir. 1994). The district court in the instant case relied on the Northern District of Indiana's decision in *Marschand v. Norfolk and Western Railway Co.*, 876 F. Supp. 1528 (N.D. Ind. 1995), *aff'd.* 81 F.3d 714 (7th Cir. 1996), which holds that only emotional injuries resulting from a threat of imminent physical harm to the plaintiff are recoverable under FELA. The *Marschand* court reasoned that such recovery "is appropriate because the employee's injury is the proximate result of the Railroad's breach of a duty owed directly to the employee," whereas "[e]motional damages caused by witnessing harm or peril to another . . . are not caused by a breach of duty owed to the employee-plaintiff. Rather, they arise as a result of the railroad's independent and separate breach of duty owed to the injured third person." 876 F. Supp. at 1535-36 (citations omitted).

In contrast to *Marschand*, the Kansas Supreme Court has held that a plaintiff within the zone of danger may recover damages under FELA for emotional distress suffered as a result of witnessing a third party's peril, so long as the plaintiff also suffers emotional injury resulting from a fear for

his or her own safety. *See Grube v. Union Pacific R.R. Co.*, 886 P.2d 845, 851 (Kan. 1994) ("We also agree that the entire damages may include emotional distress resulting from concern or fear for the safety of another person as long as plaintiff establishes that he or she suffered imminent apprehension of physical harm."). *Grube* interpreted *Gottshall* to hold that the "essential elements for recovery under the zone of danger test are that plaintiff be within the zone of danger and suffer imminent apprehension of physical harm which causes or contributes to the emotional injury." *Id.* The *Grube* court ultimately denied recovery to the plaintiff because although he was within the zone of danger, he failed to establish that his emotional injuries resulted in whole or in part from a fear for his own physical safety. *Id.*

Plaintiffs do not point to any case, nor were we able to find one, which does not hold that fear for personal physical safety is an essential element of an emotional distress claim under FELA. Given *Gottshall*'s explicit reference to "emotional injury caused by fear of physical injury to himself," we hold that in order to recover damages for emotional distress under FELA, the plaintiff must demonstrate that his or her emotional injury results from a fear for his or her own physical safety. Our holding is further supported by *Gottshall*'s reminder that the primary purpose of FELA is compensation for physical injuries and deaths caused by railroad work. *See Gottshall*, 512 U.S. at 556. Because it is unnecessary for us to decide, we leave open the question of whether emotional distress damages must be solely the result of fear for personal safety, *e.g.*, the *Marschand* rule, or whether recoverable emotional distress damages may only partially be the result of fear for one's own safety, *e.g.*, the *Grube* rule. It is unnecessary for us to answer this question because Plaintiffs have not alleged or demonstrated that their emotional injuries were caused by anything other than seeing Reese's body after the accident. *See Lukowski*, *supra*, 332 F. Supp. 2d at 1068. Therefore, Plaintiffs cannot recover emotional distress damages under FELA, and the district court properly granted judgment in favor of CSXT.

## B.     Ohio Common Law Claims

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)). In the instant case, the parties agree that Ohio law governs Plaintiffs' claims against the Reese Estate and Maura Reese. The district court held that under the plain terms of Ohio Rev. Code § 2117.06, Plaintiffs' claims are barred because they were not presented to Mrs. Reese, as administrator of the estate, within the time allotted in the statute. We review the district court's grant of summary judgment *de novo*. *Moorer*, *supra*, 398 F.3d at 486.

Section 2117.06 provides, in relevant part,

> (A) All creditors having claims against an estate, including claims arising out of . . . tort . . . shall present their claims in one of the following manners:
>
> > (1) To the executor or administrator in a writing;
> >
> > (2) To the executor or administrator in a writing, and to the probate court by filing a copy of the writing with it;
> >
> > (3) In a writing that is sent by ordinary mail addressed to the decedent and that is actually received by the executor or administrator within the appropriate time specified in division (B) of this section . . .

> (B) All claims shall be presented within one year after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that one-year period.  Every claim presented shall set forth the claimant's address.
>
> (C) A claim that is not presented within one year after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees and distributees.  No payment shall be made on the claim and no action shall be maintained on the claim, except as otherwise provided in sections 2117.37 to 2117.42 of the Revised Code with reference to contingent claims . . .

Ohio Rev. Code § 2117.06 (2002) (version in effect at time of accident).  Plaintiffs notified National Insurance, the insurer of the vehicle that Reese was driving at the time of the accident, of their claim against the estate within one year of the date of Reese's death.  It is undisputed, however, that Plaintiffs did not serve notice on Mrs. Reese as the administrator of the estate until filing the instant lawsuit nearly two years after Reese's death.

In general, presentation of notice to an insurance company is insufficient to comply with § 2117.06's requirement that notice be provided to the executor or administrator of the estate.  *See*, *e.g.*, *Beacon Mut. Indem. Co. v. Stalder*, 120 N.E.2d 743, 747 (Ohio Ct. App. 1954) ("The statute places the burden upon the *claimant* to present his claim. . . . If he fails to do so within the time provided, his rights are lost.  There is no duty imposed upon the administrator in this respect, except to receive the written claim, and, in proper time, to officially act upon it.  This duty cannot be delegated to another.") (emphasis in original).  The Ohio Supreme Court has held that where a plaintiff does not seek to recover from the assets of the estate, but only seeks recovery from the proceeds of a liability insurance policy covering the decedent, compliance with § 2117.06 is unnecessary.  *See Meinberg v. Glaser*, 237 N.E.2d 605 (Ohio 1968).  In *Meinberg*, the plaintiff was injured in an automobile accident that was proximately caused by the decedent's negligence, and filed suit against the estate seeking recovery from the decedent's liability insurance policy.  The court specifically stated that

> where it is alleged in an action for bodily injuries and property damage that such injuries and damage were proximately caused by the negligence of a decedent and that he had a policy insuring him against liability for such negligence and it does not appear that any other claims covered by such insurance have been asserted, such action may be brought against the executor or administrator of such decedent at any time within two years after the cause thereof arose without presenting a claim against the estate within the  . . . time specified in Section 2117.06 . . .

*Id.* at 609.

Plaintiffs argue that *Meinberg* is applicable here, and that they were therefore not required to present notice of their claim to Mrs. Reese as administrator within one year of Reese's death.  However, *Meinberg* makes clear that "a plaintiff who seeks to avoid the claim requirements and the . . . time limitations of Section [] 2117.06 . . . *must allege and prove* that there is something other than an asset of the estate, such as liability insurance, against which any judgment rendered in his favor may be enforced."  *Id.* at 609-10 (emphasis added).  In this case, Plaintiffs did not allege in their complaint that they seek recovery only from an insurance policy that covered Reese; in fact, their complaint does not mention an insurance policy at all, it simply demands compensation for

each Plaintiff in excess of $200,000 in compensatory damages, plus at least $750,000 in punitive damages. Additionally, in contrast to their current position, in their memorandum of law in opposition to the Reese Estate's motion for summary judgment, Plaintiffs argued that the insurance policy on the truck Reese was driving at the time of the accident was taken out in Maura Reese's name and listed Mrs. Reese as the driver of the truck. Plaintiffs also stated in their memorandum that "nowhere" on the insurance policy "does John D. Reese's name appear." Joint Appendix, "J.A." at 231. If that assertion is true, then it is unclear whether the liability insurance policy that Plaintiffs claim to seek recovery from even covered John Reese at all.

Furthermore, before the district court, Plaintiffs merely argued that by giving notice to the insurance company, they complied with § 2117.06, an argument that the district court correctly found is foreclosed under Ohio law. *See Stalder*, 120 N.E.2d at 747. Now, for the first time on appeal, Plaintiffs argue that under *Meinberg* they were not required to submit a claim to the administrator of the Reese estate, because they are seeking to recover solely from an insurance policy. We hold that Plaintiffs cannot take advantage of *Meinberg*, because they did not allege, much less attempt to prove, to the district court that they seek recovery solely from a liability insurance policy that covered Reese, and not from assets of the Reese Estate. *See United States v. Ninety Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (quoting *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003)) ("This court has repeatedly held that it 'will not consider arguments raised for the first time on appeal unless our failure to consider the issues will result in a plain miscarriage of justice.'"); *see also Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 915 (6th Cir. 2002) ("Normally, an issue not raised below may not be raised on appeal."). Because Plaintiffs failed to argue below that the recovery they seek is limited to the proceeds of a liability insurance policy that covered Reese, the district court did not err in granting summary judgment to the Reese Estate and Maura Reese as Administrator of the estate on the basis of Plaintiffs' failure to comply with § 2117.06.

## III.   CONCLUSION

For the above reasons, we **AFFIRM** the district court's judgment.