

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-1994

# Bloom v. Conrail Corp.

Precedential or Non-Precedential:

Docket 93-1903

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bloom v. Conrail Corp." (1994). *1994 Decisions*. Paper 214.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/214

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-1903
_____


JERALD E. BLOOM

v.

CONSOLIDATED RAIL CORPORATION,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 89-cv-07452)
_____


Submitted Under Third Circuit LAR 34.1(a)
April 11, 1994

Before: BECKER, MANSMANN, and SCIRICA, Circuit Judges.

(Filed   December 12, l994)

JAMES D. CRAWFORD
RALPH G. WELLINGTON
NICOLE REIMANN
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA  19103

Attorneys for Appellant


JOSEPH A. COFFEY, JR.
PATRICK T. HENIGAN
LAWRENCE A. KATZ
Coffey and Kaye
Suite 718, Two Bala Plaza
Bala Cynwyd, PA   19004

Attorneys for Appellee

--------------------------------

**OPINION OF THE COURT**

--------------------------------

BECKER, Circuit Judge.

This appeal requires that we apply the zone of danger test recently announced in Consolidated Rail Corp. v. Gottshall, 114 S. Ct. 2396 (1994) to a claim for negligent infliction of emotional distress. The claim was brought by plaintiff Jerold E. Bloom, a railroad employee, against his employer Consolidated Rail Corporation ("Conrail") under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. (1986), and resulted in a large judgment in his favor against Conrail. Bloom's injuries were caused by the emotional stress that he suffered after a locomotive engine he was operating struck and killed a pedestrian. Because under Gottshall the judgment cannot stand, we reverse and remand with directions to enter judgment for Conrail.

## I.   FACTS AND PROCEDURAL HISTORY

Bloom was employed by Conrail as a locomotive engineer beginning in 1976. During his employment at Conrail, two of his trains were involved in fatalities. The first fatality occurred in the spring of 1986, when Bloom's engine struck a car and killed the driver. Following this fatality, Conrail allowed Bloom to return to work. Medical treatment was available through the health plan, though Conrail did not require psychiatric

desensitization[1] or any other kind of treatment, and Bloom did not seek any. The second fatality occurred on October 28, 1986, when Bloom's locomotive struck and killed a pedestrian who stepped on the tracks to commit suicide. Even though Bloom felt faint, lightheaded, and nauseous, a Conrail patrolman required him to exit the train and verify the point of contact, which was to Bloom, at that point, a gruesome exercise. Following the second fatality, Bloom sought and received psychiatric treatment covered under the health plan, and underwent extensive counseling for post traumatic stress disorder and chronic phobia syndrome. He was never able to resume railroad work.

Bloom brought this FELA action for negligent infliction of emotional distress in the District Court for the Eastern District of Pennsylvania. Conrail twice moved for summary judgment on grounds that Bloom's claim was not actionable under FELA. The district court denied the motions. At trial, after the presentation of plaintiff's case, Conrail moved for judgment as a matter of law on the grounds that Bloom's claim was not actionable and that there was insufficient evidence of causation. The motion was denied. The jury determined that Bloom suffered $425,000 total damages, of which thirty percent was caused by Conrail's negligence and seventy percent was caused by the suicidal pedestrian. The district court entered a $425,000

[1]. One trauma, even if it fails to cause a severe reaction, apparently may sensitize a person to subsequent traumas. During psychiatric desensitization treatment, doctors attempt to reduce a patient's propensity for a sensitized future response to trauma via counseling and medication.

judgment for Bloom, reasoning that 45 U.S.C. § 51 holds carriers liable for injuries resulting "in whole or in part" from their negligence. Conrail filed post-trial motions requesting judgment as a matter of law or, alternatively, to amend the judgment to limit damages. The district court sua sponte dismissed the motions for lack of prosecution.

On this appeal Conrail has argued that the district court erred in not granting judgment as a matter of law because Bloom's claim is not actionable under FELA in light of Gottshall (which was decided after the appellate briefs were filed),[2] and because there was no evidence that Conrail caused Bloom's injury. Conrail also assigns error in the district court's refusal to apportion damages according to the jury's determination, and contends that the district court abused its discretion by sua sponte dismissing Conrail's post-trial motions. Bloom counters each of these contentions, and also responds that if Bloom's claim is not actionable on the present record under Gottshall, we should remand for further factual findings.[3] We limit our

---

[2]. We held the case c.a.v. pending the Supreme Court's disposition of Gottshall.

[3]. On appeal, Bloom has also contended that Conrail's appeal is not properly before this court because Conrail did not timely file its notice of appeal. We find Bloom's appellate jurisdiction arguments plainly without merit. Bloom submits that Conrail's appeal is not timely because: (1) under Rule 4(a)(1) of the Federal Rules of Appellate Procedure ("FRAP"), Conrail's notice of appeal was filed more than thirty days after the district court entered judgment in favor of Bloom and (2) FRAP 4(a)(4) does not apply because Conrail's post-trial motions were not "timely" since they were dismissed for lack of prosecution under E.D. Pa. Local Rule 20(e).

discussion to the dispositive question whether Bloom's FELA claim is actionable in the wake of Gottshall.  This is a question of law and our review is plenary.

## II.  IS BLOOM'S CLAIM ACTIONABLE UNDER FELA?

A.  Gottshall

The Gottshall opinion dealt with two cases, both emanating from this court, Gottshall v. Consolidated Rail Corp., 988 F.2d 355 (3d Cir. 1993) and Carlisle v. Consolidated Rail Corp., 990 F.2d 90 (3d Cir. 1993).

Like Bloom, James Gottshall was an employee of Conrail. Gottshall was a track repairman who was assigned along with his co-workers the task of replacing a stretch of defective track on an extremely hot and humid afternoon.  During that afternoon Conrail drove the men to complete their task at an unusually fast pace and, although water was available, repeatedly discouraged breaks.  Under these conditions, Gottshall's longtime friend, Richard Johns, collapsed.  In response, Gottshall administered a cold compress which enabled Johns to regain consciousness.
(..continued)

We hold that Conrail's notice of appeal was timely filed within the thirty-day appeal period of FRAP 4(a)(4).  Our holding here is controlled by Osei-Afriyie v. Medical College of Pennsylvania, 937 F.2d 876 (3d Cir. 1991).  In Osei-Afriyie, we held that a notice of appeal was timely when it was filed more than thirty days after the judgment date, but within thirty days of the district court's dismissal of post-trial motions for lack of prosecution under E.D. Pa. Local Rule 20(e).  In this case, like Osei-Afriyie, Conrail's notice of appeal was filed more than 30 days after the judgment date, but within 30 days of the district court's dismissal of post-trial motions for lack of prosecution under E.D. Pa. Local Rule 20(e).  Therefore, like the appeal in Osei-Afriyie, it is timely under FRAP 4(a)(4).

Following this incident, Conrail ordered the men, except Johns, back to work.  Five minutes later, Johns again collapsed.  Gottshall again rushed to assist him and, realizing that his friend was having a heart attack, administered CPR.  The supervisor tried the radio to call paramedics, but it had been taken offline for repair.  By the time help arrived Johns had died at Gottshall's side.  The men were then again ordered back to work, with Johns' sheet-covered corpse left in view along the tracks.

The next day, Conrail reprimanded Gottshall for administering CPR, and over the days that followed, Conrail worked the crew as hard under similar conditions.  Gottshall subsequently left work, secluded himself in his basement, and spent three weeks in a psychiatric institution where he was treated for major depression and post-traumatic stress disorder.  He exhibited suicidal preoccupations, anxiety, insomnia, appetite loss, physical weakness, nightmares, and weight loss.

We reversed the district court's grant of summary judgment for Conrail and remanded for trial.  We reasoned that, when considering the totality of the extreme facts, Gottshall's claim had sufficient indicia of genuineness of emotional injury to be cognizable under FELA, and that genuine issues of material fact existed regarding breach of duty, injury, and causation.  Judge Roth dissented.  The Supreme Court granted certiorari, and determined that the common-law "zone of danger" test is the proper standard for evaluating whether a railroad employer has a legal duty in negligent infliction of emotional distress claims

under FELA.  Since that test was different from and narrower than this court's test, the Court reversed and remanded for reconsideration.

B.   Carlisle

Alan Carlisle began working for Conrail as a train dispatcher in 1976.  His job was to ensure timely and safe movement of passengers and cargo.  A 1984 reduction in force, combined with aging railstock and equipment, increased his job stress and responsibility.  Conrail constantly pressured Carlisle to achieve on-time performance and instructed him to ignore safety concerns that would slow the movement of trains.  In 1988, Carlisle additionally became trainmaster in the South Philadelphia yards, where he troubleshot trains in dangerous areas over erratic hours.  He began to experience insomnia, fatigue, headaches, depression, sleep walking, and weight loss. After working 12-15 hour days for 15 straight weeks, his stress-related problems culminated in a nervous breakdown.

We affirmed the jury award of $386,500 in damages, reasoning that Carlisle's claim had sufficient indicia of genuineness of emotional injury and that it was reasonably foreseeable that extended exposure to the dangerous and stressful working conditions would cause injury.  We therefore upheld his FELA claim for negligent infliction of emotional injuries arising from work-related stress.  The Supreme Court granted certiorari. In contrast to Gottshall, which resulted in a remand for further consideration in light of the newly announced standard, the Court in Carlisle not only reversed, but also remanded with

instructions to enter judgment for Conrail, explaining that Conrail had no legal duty since Carlisle plainly was not in the zone of danger.

### C.   The Zone of Danger Test

The Supreme Court adopted the zone of danger test, in part, to limit defendants' liability to certain classes of plaintiffs and to certain types of harm, notwithstanding that some genuine claims would be foreclosed.  Gottshall, 114 S. Ct. at 2408-09.  In justifying these limitations, the Court wrote:

> Our FELA cases require that we look to the common law when considering the right to recover asserted by respondents, and the common law restricts recovery for negligent infliction of emotional distress on several policy grounds:  the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability.

Id. at 2411.  The Court concluded that these policy considerations "accord with the concerns that have motivated our FELA jurisprudence."  Id.

To effectuate these goals, the Court defined the zone of danger test as follows:  "The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct."  Id. at 2406 (emphasis added).  Unfortunately, using different language seemingly in tension with the foregoing, the Court later explained:  "Railroad employees thus will be able to

recover for injuries--physical and emotional--caused by the negligent conduct of their employers that <u>threatens them imminently with physical impact</u>."  <u>Id</u>. at 2411 (emphasis added).  Thus it is unclear whether the zone of danger test turns (in the absence of actual physical impact) on risk of physical impact or risk of physical harm.

In the course of its opinion, the Court made several other pertinent observations.  The Court stated that "[u]nder this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused <u>by fear of physical injury to himself</u>, whereas the worker outside the zone will not," <u>id</u>. at 2410-11 (emphasis added),  However, again using different language, the Court later stated that  "[w]e see no reason . . . to allow an employer to escape liability for emotional injury caused <u>by apprehension of physical impact</u> . . . ."  <u>Id</u>. at 2411 (emphasis added).  Then, the Court noted that "[t]he zone of danger test is consistent with FELA's central focus on physical perils," <u>id</u>. at 2410, and that "the rule will further Congress' goal of alleviating the physical dangers of railroading," <u>id</u>. at 2411, but this passage fails to clear up the confusion.

The Court also instructed that the "zone of danger test announced today"  should be applied "in light of common-law precedent."  <u>Id</u>. at 2411.  Similarly, in a concurring opinion, Justice Souter emphasized that we should "develop a federal common law of negligence under FELA, informed by reference to the evolving common law."  <u>Id</u>. at 2412 (Souter, J., concurring).  We

take this as an injunction to look at common-law precedent, state and federal, and to build upon it.

In sum, Gottshall mandates application of the common-law zone of danger test to determine whether a railroad employer has a legal duty that would enable negligent infliction of emotional distress claims to be made under FELA. As we have pointed out, the Supreme Court's language is in important respects opaque and confusing in that it is unclear whether plaintiffs must be placed in immediate risk of physical harm[4] or whether plaintiffs must be imminently threatened with physical impact.[5] Although these concerns are not outcome determinative

---

[4]. It is also unclear whether the Court would require the plaintiff to actually fear physical injury (to himself) as a prima facie element (absent physical impact) or would just consider fear in determining damages. While the Court appears to have adopted the damages approach (by stating that "a worker in the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself," Gottshall, 114 S. Ct. at 2410-11), we note that some common-law zone of danger tests include fear as a prima facie element. See, e.g., Niederman v. Brodsky, 261 A.2d 84, 90 (Pa. 1970). Though it does not appear under the facts of this case that Bloom feared physical injury to himself, we need not reach the issue, since we hold that Bloom fails to otherwise qualify under other aspects of the enunciated test.

[5]. Finally, it is also unclear, inter alia, whether by this language ("physical impact") the Court would require a plaintiff's initial injuries to be physically manifested. Many zone of danger jurisdictions "require that a plaintiff demonstrate a 'physical manifestation' of an alleged emotional injury, that is, a physical injury or effect that is the direct result of the emotional injury, in order to recover." Gottshall, 114 S. Ct. at 2407 n.11 (citing Garvis v. Employers Mut. Casualty Co., 497 N.W.2d 254 (Minn. 1993)). However, under Gottshall's formulation, it is not clear whether physical manifestation is an element. In Atchison, Topeka & Santa Fe Railway Co. v. Buell, 107 S. Ct. 1410, 1418 & n.22 (1987), the Supreme Court hinted but

here, we hope the Supreme Court will clarify them in its next FELA emotional distress case.

### D.   Discussion

In applying Gottshall to this case, it is necessary that we assess:  (1) whether Bloom sustained a physical impact; or (2) whether Bloom was placed in immediate risk of physical harm (or alternatively whether Bloom was threatened imminently with physical impact).

### 1.

Under the zone of danger test announced by the Court in Gottshall, Conrail has a legal duty if Bloom sustained a physical impact.  Bloom argues that he sustained a physical impact because the locomotive engine struck the pedestrian, and he could hear the thump.  Bloom further argues any physical impact, no matter

(..continued)
failed to decide, whether physical manifestation is required under FELA.  Ultimately, we also need not reach this issue because, in light of common law precedent, Bloom did demonstrate physical manifestation through weight loss, loss of sleep, nightmares, vomiting, and diagnosed post-traumatic stress disorder.  See, e.g., Towns v. Anderson, 579 P.2d 1163, 1164 (Colo. 1978) (en banc) (nightmares, sleepwalking, nervousness, and irritability showed sufficient physical manifestation); Savard v. Cody Chevrolet, Inc., 234 A.2d 656, 657, 660 (Vt. 1967) (nervous shock, sleeplessness, weight loss, faintness, and trembling showed sufficient physical manifestation); Daley v. LaCroix, 179 N.W.2d 390, 395-96 (Mich. 1970) (weight loss, inability to perform household duties, extreme nervousness, and irritability are facts from which jury could find physical injury); Johnson  v. State, 334 N.E.2d 590, 591 (N.Y. 1975) (recurrent nightmares, difficulty in concentrating, irritability, inability to function properly at work, tenseness, anxiety, and psychiatric confirmation of emotional distress showed objective manifestations of the injury).

how slight, suffices, citing Plummer v. United States, 580 F.2d 72, 76-77 (3d Cir. 1978), where the plaintiff was negligently exposed to potentially lethal tuberculosis. Plummer, 580 F.2d at 76. Conrail counters that Bloom did not sustain a physical impact because at all times he safely rode in the locomotive's cab, and, while the pedestrian was physically impacted by the train, Bloom was not. We agree.

As Conrail submits, Bloom rode safely in the locomotive's cab, and the physical impact was between the train and the pedestrian. Even if the "no-matter-how-slight" standard applies, Bloom's claim would unavailingly stretch the broadest common-law cases.[6] Even Stoddard v. Davidson, 513 A.2d 419 (Pa.

---

[6]. Under the common law, courts applying the physical impact test developed the "no-matter-how-slight" standard to prevent sometimes harsh results in near-miss situations. Thus, physical impact was found in some tenuous circumstances. W. Page Keeton et al., Prosser and Keeton on the Law of Torts 363-64 (5th ed. 1988) (" 'Impact' has meant a slight blow, a trifling burn or electric shock, a trivial jolt or jar, a forcible seating on the floor, dust in the eye, or inhalation of smoke.") (citations omitted); see, e.g., Homans v. Boston Elevated Ry. Co., 62 N.E. 737 (Mass. 1902) (slight blow); Kentucky Traction & Terminal Co. v. Roman's Guardian, 23 S.W.2d 272 (Ky. 1929) (trifling burn); Deutsch v. Shein, 597 S.W.2d 141 (Ky. 1980) (x-rays of pregnant woman); Zelinsky v. Chimics, 175 A.2d 351 (Pa. Super. Ct. 1961) (jostling of occupants in low-speed car collision); Porter v. Delaware, Lackawanna W. R.R. Co., 63 A. 860 (N.J. 1906) (dust in eye); Morton v. Stack, 170 N.E. 869 (Ohio 1930) (smoke inhalation). Other courts applying the physical impact test, however, have not extended it so far. See, e.g., Williams v. Baker, 572 A.2d 1062, 1064 n.8 (D.C. 1990) ("We use the term 'impact' in this discussion and throughout the opinion in its ordinary use, just as its use has developed under the impact rule. It means a violent physical contact, a striking together, a collision.") (citing Webster's New World Dictionary 703 (2d ed. 1984)).

As courts increasingly adopted the zone of danger test, the need to stretch the definition of physical impact dissipated. Some zone of danger jurisdictions, however, do include the no-

Super. Ct. 1986), where it was held that the plaintiff sustained a "physical impact" when he was jostled as a result of his motor vehicle running over a corpse left in the road, is distinguishable in terms of extent of the impact.[7]  Moreover, Plummer is also distinguishable because it is a toxic exposure case involving the threat of future physical harm -- not an accident case like this one.  So then, Bloom did not sustain a physical impact, and hence we turn to the other facets of the test.

2.

Under the zone of danger test announced by the Supreme Court in Gottshall, Conrail may have a legal duty to Bloom if he was placed in immediate risk of physical harm or if Bloom was threatened imminently with physical impact.  Compare Towns v. Anderson, 579 P.2d 1163 (Colo. 1979) (boy on porch of home destroyed by explosion and fire who experienced no direct physical impact was subjected to "unreasonable risk of bodily harm"); Robb v. Pennsylvania R.R. Co., 210 A.2d 709 (Del. 1965) (woman who lodged car in rut on train track and jumped prior to collision but who experienced no direct physical impact was

(..continued)
matter-how-slight qualifier in the physical impact prong of the zone of danger test.  See Plummer, 580 F.2d at 76 (quoting Kahle v. Glosser Bros., 462 F.2d 815, 817 (3d Cir. 1972)).  Importantly, in Gottshall, the Supreme Court included the no-matter-how-slight qualifier when defining the physical impact test but did not include it when defining the zone of danger test.  Gottshall, 114 S. Ct. at 2406.

[7].  Moreover, the Stoddard panel was seriously divided.  Judge Brosky wrote the opinion of the court, Judge Johnson dissented, and Judge Lipez concurred in the result without opinion.

"within the immediate zone of physical risk") with Resavage v. Davies, 86 A.2d 879 (Md. 1952) (mother who, from porch, watched child get hit by car was not subjected to unreasonable risk of bodily harm); Stadler v. Cross, 295 N.W.2d 552 (Minn. 1980) (parents who, from a few yards away, watched child get hit by car not in "zone of danger of physical impact"); Asaro v. Cardinal Glennon Memorial Hosp., 799 S.W.2d 595 (Mo. 1990) (mother who sustained emotional injury after child was mistreated at hospital was not "threatened with bodily harm").  While Bloom contends that he met this test, Conrail counters that Bloom was not placed in immediate risk of physical harm because at all times he safely rode in the locomotive's cab.  We agree, and conclude Bloom was neither placed in immediate risk of physical harm nor threatened imminently with physical impact.

### III.  CONCLUSION

In sum, we hold that the district court erred as a matter of law in denying Conrail's motion for judgment as a matter of law because Bloom's evidence fails to establish any set of facts actionable under FELA in light of the zone of danger test announced by the Supreme Court in Gottshall.  Accordingly, we will reverse the judgment and remand with instructions to enter judgment for Conrail.[8]

---

[8].  Bloom contends that if we find insufficient evidence in the record to support a finding of physical impact or zone of danger, then the appropriate remedy is a new trial because "[a] new trial will permit Mr. Bloom to present evidence that was not relevant under this Court's decision and that did not become relevant until the Gottshall decision was rendered on June 24, 1994."

---

(..continued)
Supplemental Brief of Appellee at 5 n.4.  But in making this
argument, Bloom neither proffers nor suggests what new evidence
is now relevant and would be introduced in light of <u>Gottshall</u>.
Hence we reject this argument.