**Marvin STEWART and Mattie Stewart, Plaintiffs,**

v.

**CENTRAL OF GEORGIA RAILROAD COMPANY and Sloan Valve Company, Defendants.**

**Sloan Valve Company, Third–Party Plaintiff,**

v.

**Consolidated Rail Corporation, Third–Party Defendant.**

No. CV199–002.

United States District Court, S.D. Georgia, Augusta Division.

March 3, 2000.

Michael J. Warshauer, Lyle G. Woodruff, Bradford W. Thomas, Warshauer, Woodruff & Thomas, Atlanta, GA, for

plaintiffs Marvin Stewart and Mattie Stewart.

George R. Hall, Tara Rice Simkins, Hull, Towill, Norman, Barrett & Salley, P.C., Augusta, GA, for defendant Central of Georgia Railroad Company.

Alan F. Herman, Panton Patrick Pou, Hawkins & Parnell, L.L.P., Atlanta, GA, for defendant Sloan Valve Company.

James E. Gilson, Robert E. Casey, Jr., Casey, Gilson & Williams, P.C., Atlanta, GA, for third-party defendant Consolidated Rail Corporation.

## ORDER

BOWEN, Chief Judge.

Before the Court in the captioned case is each Defendant's separate Motion for Summary Judgment. A hearing on these motions was conducted on January 13, 2000. For the reasons given below, each Defendant's Motion for Summary Judgment is **GRANTED**.

### I. Background

The facts are not in dispute. This suit arises from a tragic railroad accident. Plaintiff Marvin Stewart ("the engineer") is an engineer employed by Defendant Central of Georgia Railroad ("the railroad"). On January 14, 1997, the engineer and his co-worker, Richard Wagoner ("Wagoner"), were delivering rail cars to various industrial customers. The engineer was operating the train's locomotive. Wagoner was responsible for switching, spotting, and coupling cars on the track.

The accident occurred on a rail spur which services a facility owned by Occidental Chemicals (at the time it was called "Power Silicates"). Two cars were to be left at the chemical facility, a tank car and a hopper car. When the tank car was in the right place, Wagoner climbed onto it. Wagoner used a wheel on the tank car to apply the hand brake. This wheel tightens a chain which moves levers adjusted by a device called a slack adjuster. Turning the wheel causes the brake shoes to tighten against the wheels so as to hold the car in place. Defendant Sloan Valve Company ("Sloan") manufactured the slack adjuster on the tank car.

After Wagoner applied the hand brake, the tank car was uncoupled from the rest of the train. The track on which they left the tank car lay on a slight hill. Wagoner observed that the tank car was not rolling and that the brake shoes appeared to be in contact with the wheels.

With the tank car in place, Wagoner proceeded to spot the hopper car. The hopper car was left at the low point of the spur where it could not roll by itself. At this point, the tank car and hopper car lay between the end of the rail spur and a third car that was already at the chemical facility. Wagoner noticed that the drawhead[1] on the third car was askew. Wagoner walked between the hopper car and the third car to straighten the drawhead.[2] While Wagoner was straightening the drawhead, the tank car started to roll slowly downhill. The tank car hit the hopper car. The hopper car then lurched forward, crushing Wagoner between the hopper car and the third car. Miraculously, Wagoner managed to free himself and

---

**1.** The word "drawhead" is loosely synonymous with "coupler." *Byrd v. Seaboard Sys. R.R., Inc.,* 510 So.2d 156, 157 (Ala.1987); *Peeler v. Southern Ry. Co.,* 32 N.C.App. 759, 233 S.E.2d 685, 686 (1977). According to the Mississippi Supreme Court, "The coupler consists of a knuckle joined to the end of a drawbar. The drawbar, or drawhead, extends the knuckle from the car and is designed to move laterally. Lateral movement of the drawhead allows cars to couple on a curved track and also prevents the derailment of cars on curved track." *Batton v. Illinois*

*Cent. R.R. Co.,* 742 So.2d 134, 135 (Miss. 1999). A useful illustration of an automatic coupler appears in the United States Supreme Court's opinion in *Norfolk & Western Railway Co. v. Hiles,* 516 U.S. 400, 116 S.Ct. 890, 893, 134 L.Ed.2d 34 (1996).

**2.** The couplers move laterally. If they lie off center, this misalignment may prevent the cars from coupling. *See Norfolk & W. Ry. Co. v. Hiles,* 516 U.S. 400, 116 S.Ct. 890, 892, 134 L.Ed.2d 34 (1996) (explaining how automatic couplers work).

hobbled to the chemical facility, where he got help.

Meanwhile, the engineer was sitting in the cab of the locomotive. The car against which Wagoner was crushed impacted a car at the end of the train. Seven coupled cars stood between Wagoner and the locomotive. The engineer did not see Wagoner get crushed. (Stewart Dep. 22 at 37.) Likewise, the engineer did not see the cars rolling down the track towards the train. (*Id.* at 38.) The cars could not possibly have hit him. (*Id.*) The engineer testifies that he felt a "big jolt" when the impact occurred. (*Id.* at 37.) The engineer claims that this jolt "twisted me to the side a little bit and . . . just doubled me over, you know." (*Id.* at 49.)

After the collision, the engineer waited a minute or so. (*Id.* at 41.) The engineer then tried to call Wagoner on the radio. (*Id.*) After getting no response, he tried again. (*Id.* at 42.) The engineer then left the cab. (*Id.*) He hurried to the end of the train, (*id.*), covering a distance a little longer than the length of a football field.[3] Wagoner was not there when the engineer arrived. (*Id.*) The engineer did not see Wagoner until he found him lying at the threshold of the Power Silicates building. (*Id.* at 43.)

The engineer claims that this accident caused various injuries. He primarily alleges that both Defendants' conduct caused him "severe emotional injuries." (Compl.¶ 16.) The engineer contends that the accident also caused back pain, although he has not sought any medical treatment for his back injuries. (Stewart Dep. at 49–50.) The engineer also alleges that the stress of this trauma caused him to develop a virus in his eye. (*Id.* at 52–53.)

The engineer has sued the railroad under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, for emotional and physical harm. The engineer contends that the railroad is strictly liable under FELA for violations of the Safety Appliance Act, specifically the Hand Brake Act, 49 U.S.C. § 20302(a)(1)(B), and the Automatic Coupler Act, 49 U.S.C. § 20302(a)(1)(A). The engineer has also sued Sloan under Georgia law, claiming that the slack adjuster on the tank car was a defective product. The engineer's wife has filed a loss of consortium claim against Sloan only.

In a companion action now pending as CV199–001, Wagoner has sued the railroad and Sloan for his injuries. Sloan has filed a Third-party Complaint against Consolidated Rail Corporation, seeking indemnity and contribution.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party

---

**3.** Seven coupled cars and the engine comprised the length of the train. I am told that each car is fifty feet long and that the engine is approximately seventy-two feet long. Accordingly, the engineer traversed a distance of approximately one hundred forty yards.

"must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark*, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick*, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The clerk has given the non-moving parties notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default (Doc Nos. 38 and 48). Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

Both Defendants have moved for summary judgment. Each motion will be considered in turn. What is primarily at issue is the validity of the engineer's emotional distress claims.

### A. The Railroad's Motion for Summary Judgment

The engineer's claims against the railroad are governed by FELA. FELA makes railroads involved in interstate commerce liable for negligent infliction of injury to their employees. 45 U.S.C. § 51. FELA also makes railroads strictly liable to their employees for violations of the Safety Appliance Act, 49 U.S.C. §§ 20301–20306. *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969). The engineer maintains that violations of safety statutes caused his emotional distress.

The principles governing emotional distress claims under FELA appear in the Supreme Court's opinion in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). In *Gottshall*, the Court adopted the common law "zone of danger" test. 512 U.S. at 554, 114 S.Ct. 2396. The zone of danger test "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48, 114 S.Ct. 2396.[4] Applying the zone of danger test requires reference to common law precedent. *Id.* at 544, 114 S.Ct. 2396.

At oral argument, Plaintiffs' counsel correctly and candidly acknowledged that the engineer was not in the zone of danger. The issue, then, is whether the engineer suffered a physical impact sufficient to recover emotional damages. Whether the engineer ever feared for his own safety is relevant to determining the sufficiency of the impact because the impact must relate to the emotional distress. *Grube v. Union Pac. R.R. Co.*, 256 Kan. 519, 886 P.2d 845, 852 (1994).

▪ The jolt of the movement of the cars in the train is insufficient. The engineer admits that he did not see Wagoner get crushed. (Stewart Dep. at 37.) He also admits that he did not see the cars rolling down the track and that they could not possibly have hit him. (*Id.* at 38.) The engineer saw nothing and could not have had an apprehension of impending danger in the moments preceding the collision. In fact, the engineer testifies only that he was unprepared for the collision. (*Id.*) Thus,

he could not have had any anticipatory fear for his own safety. In the absence of any evidence that the engineer feared for his own safety, the jolt of the collision does not satisfy the zone of danger test as set forth in *Gottshall*. *Grube*, 886 P.2d at 852; *see also Bloom v. Consolidated Rail Corp.*, 41 F.3d 911, 916 (3d Cir.1994) (holding that the thump of a collision with a pedestrian is not an impact sufficient to sustain a FELA claim for negligent infliction of emotional distress).

FELA is a remedial statute that must be construed liberally. *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396. FELA's central focus, however, is on the *physical* perils of railroading. *Id.* at 542, 114 S.Ct. 2396; *Grube*, 886 P.2d at 850. Even furthering FELA's remedial purposes does not warrant a remedy for this engineer. Accordingly, the engineer cannot recover emotional damages from the railroad.

### B. Sloan's Motion for Summary Judgment

The issues in Sloan's motion are similar to the issues in the railroad's motion. The engineer claims emotional damages arising from the purportedly defective slack adjuster manufactured by Sloan. The Complaint asks for punitive damages. Also, the engineer's wife seeks damages for loss of consortium.

#### 1. Recovery of Damages for Emotional Distress

▪ Georgia law governs the engineer's state law products liability claims against Sloan. Georgia does not follow the zone of danger rule but instead follows the im-

---

**4.** The *Gottshall* decision applies to claims for negligent infliction of emotional distress. The engineer, however, is not suing the railroad in negligence. (Pl.'s Ans. to Mandatory Interrogs. ¶ 1.) Instead, the engineer is suing in strict liability for violations of the Safety Appliance Act.

Assuming without deciding that emotional damages are recoverable for violations of the Safety Appliance Act, I see no reason to apply a different rule. *See, e.g., Kately v. Wilkinson,* 148 Cal.App.3d 576, 195 Cal.Rptr. 902, 908

(1983) (holding that recovery for emotional distress is the same under strict liability as under negligence); *see also Pasquale v. Speed Prod. Eng'g,* 166 Ill.2d 337, 211 Ill.Dec. 314, 654 N.E.2d 1365, 1372–73 (1995) (holding that emotional damages are not recoverable in strict liability and that the plaintiff failed to satisfy the physical impact requirement of the bystander rule). Thus, the *Gottshall* zone of danger test should govern the engineer's strict liability claims.

pact rule. *OB–GYN Assoc. of Albany v. Littleton,* 259 Ga. 663, 665, 667, 386 S.E.2d 146 (1989). To recover emotional damages, the engineer must show either that Sloan acted willfully or maliciously or that he incurred a physical injury. *Id.* at 666, 386 S.E.2d 146 (quoting *Westview Cemetery v. Blanchard,* 234 Ga. 540, 544, 216 S.E.2d 776 (1975)). A mere physical impact is not enough. The "[physical] impact which will support a claim for damages for emotional distress must result in a physical injury." *Id.* The emotional harm must be a direct result of the physical injury. *Id.* at 665, 386 S.E.2d 146 (quoting Restatement (Second) of Torts § 456). The impact rule governs emotional distress claims in products liability cases. *Bishop v. Farhat,* 227 Ga.App. 201, 203, 489 S.E.2d 323 (1997). There is no evidence that Sloan acted willfully or maliciously. Therefore, the engineer must show that he sustained a physical injury which caused his emotional distress.

Sloan argues that the engineer's emotional distress claims fail because he never incurred a physical injury. Sloan also argues that even if the engineer sustained a physical injury, his emotional distress was not the result of the injury but instead the result of witnessing Wagoner's injuries. The engineer counters that the jolt accompanying the collision satisfies Georgia's impact rule.

▆ The jolt of the movement of the train cars does not satisfy Georgia's impact rule. The evidence shows that the engineer never feared for his own safety. Thus, the jolt of the train cars did not cause the engineer's emotional distress. On the contrary, it is clear that the trauma of Wagoner's injuries caused the engineer's emotional distress. The engineer cannot recover for emotional distress resulting from separate injuries to another person. *Thomas v. Carter,* 234 Ga.App. 384, 387, 506 S.E.2d 377 (1998). The engineer must show that his emotional distress is the result of *his* physical injury. *Lee v. State Farm Mut. Auto. Ins. Co.,* 238 Ga. App. 767, 768, 517 S.E.2d 328 (1999) (quot-

ing *OB–GYN Assoc. of Albany v. Littleton,* 261 Ga. 664, 664, 410 S.E.2d 121 (1991)).

Further, the alleged virus in the engineer's eye will not sustain his claim. According to the engineer, his eye doctor told him that the virus is a "result of a depression or trauma or something." (Stewart Dep. at 53.) The eye problem thus resulted from the engineer's emotional distress, not from any physical injury for which Sloan is liable. Georgia's impact rule, however, requires proof of damage resulting from a *physical injury.* *Littleton,* 259 Ga. at 665, 386 S.E.2d 146 (quoting Restatement (Second) of Torts § 456). Absent gross negligence or willful misconduct, the eye virus cannot support emotional damages. *Posey v. Medical Center–West, Inc.,* 184 Ga.App. 404, 405, 361 S.E.2d 505 (1987). Accordingly, the engineer cannot recover emotional damages from Sloan.

### 2. Recovery of Punitive Damages

To recover punitive damages under Georgia law, the engineer must show by clear and convincing evidence that Sloan's actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b). "Negligence, even gross negligence, is inadequate to support a punitive damage award." *Tower Fin. Serv., Inc. v. Smith,* 204 Ga.App. 910, 918, 423 S.E.2d 257 (1992) (internal quotation marks and alterations omitted). The engineer has come forward with no evidence tending to show that Sloan's conduct warrants punitive damages. Thus, punitive damages are unavailable.

### 3. Recovery for Loss of Consortium

The engineer's wife has sued Sloan for loss of consortium. Her claim derives from her husband's claim. *Stapleton v. Palmore,* 250 Ga. 259, 259, 297 S.E.2d 270 (1982). Because the engineer cannot recover emotional damages, his wife cannot

recover for any resulting loss of consortium. *Johnson v. Metropolitan Atlanta Rapid Transit Auth.*, 230 Ga.App. 105, 107, 495 S.E.2d 583 (1998). Therefore, summary judgment is appropriate as to loss of consortium arising from the engineer's emotional distress.

### C. Claims for Physical Injury

The engineer claims primarily emotional damages. With these emotional damages foreclosed, any remaining injuries are minimal. In passing, the Complaint asks for damages for physical suffering, lost wages, and medical expenses. (Compl.¶¶ 17, 18, 22.) The only evidence of physical suffering, however, is the engineer's testimony that the collision "doubled me over." (Stewart Dep. at 49.) Although the engineer claims that his back is occasionally sore, this soreness has never been serious enough to require medical treatment of any kind. (*Id.* at 49, 70.) The engineer also maintains that the accident caused him to miss two days of work and that the stress of the trauma caused a viral infection in his eye. (*Id.* at 52–53; 71.)

■ Any recovery for these injuries would be minimal. As such, these injuries are not practically actionable and do not merit the expense of a jury trial. Max L. Veech & Charles R. Moon, *De Minimis Non Curat Lex,* 45 Mich.L.Rev. 537, 553 (1947) ("It is just not good common sense to encourage or allow further litigation at an expense in excess of the most that can be gained."). A trial would be "a play which is not worth the candle." *Van Gorder v. Sherman,* 81 Iowa 403, 46 N.W. 1087, 1088 (1890). Because these remaining injuries are de minimis and because the engineer cannot recover any emotional damages, both Defendants are entitled to summary judgment on all claims.

### IV. Conclusion

Upon the foregoing, each Defendant's summary judgment motion (Doc. Nos. 37 and 47) is **GRANTED.** The clerk is instructed to **CLOSE** this case and **ENTER** **FINAL JUDGMENT** in favor of Defendants. Costs are taxed against Plaintiff.