## A09A0003. NORFOLK SOUTHERN RAILWAY COMPANY v. EVERETT.
### (682 SE2d 621)

DOYLE, Judge.

In this action under the Federal Employers' Liability Act ("FELA"), Norfolk Southern Railway Company appeals the trial court's denial of its motion for summary judgment on Michael Everett's claim for emotional damages arising out of a train derailment and collision into a building. Because the trial court correctly concluded that Everett was within the zone of danger caused by the derailment, we affirm.

---

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "In reviewing the grant of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[1]

Viewed in favor of Everett, the evidence shows that on March 6, 2006, Everett was employed as an engineer for Norfolk Southern and was tasked with moving a six-car train filled with auto parts down an incline into the Ford Hapeville auto plant. Assisted by two other Norfolk Southern employees standing on the outside of the leading railroad car, Everett operated the locomotive that pushed the cars toward the Ford plant. One of the employees misinformed Everett that the train derailment device was in the "off" position when in fact it was in the "on" position. Acting at the direction of his supervisor, Everett moved the train forward, and, due to the position of the derailment device, the cars began derailing about 150 feet from the plant's entrance. The derailed cars continued toward the plant, and the train's emergency brakes immediately activated. Everett, assuming that the train had derailed, quickly applied the engine brakes. Before the train came to a complete stop, it traveled approximately 300 feet from the point of derailment, causing a total of three of the train's six cars to derail, with two of those cars crashing into the Ford plant, setting off a fire alarm light and the building's fire sprinklers. Everett was "slightly pulled" in his seat during the incident but suffered no physical injury.

Everett made unanswered radio calls to the two other employees and waited in the locomotive until someone came to him and announced the derailment and that no one had been hurt. When Everett went home, he experienced severe emotional distress from the incident, resulting in his temporary hospitalization. He has not been able to return to work.

Everett sued Norfolk Southern under FELA (45 USC § 51), alleging a claim for negligent infliction of mental distress. Everett has testified that during the incident, he became frightened that if the train did not stop, he and his co-workers might be killed through fire, through the building collapsing on them, through the train turning over, or through the train's fuel tanks becoming compromised and exploding. Three physicians have testified that the incident severely depressed Everett, resulting in nightmares, panic

---

[1] (Footnote omitted.) *Norris v. Central of Ga. R. Co.*, 280 Ga. App. 792, 793-794 (635 SE2d 179) (2006) (FELA action).

attacks, loss of weight, difficulty sleeping, an irritable and angry disposition, and suicidal ideations. Norfolk Southern moved for summary judgment, which the trial court denied. With leave of this court, Norfolk Southern has appealed.

As explained by the United States Supreme Court in *Consolidated Rail Corp. v. Gottshall*,[2]

> FELA was intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work. . . . By imposing liability, FELA presumably also was meant to encourage employers to improve safety measures in order to avoid those claims. . . . [W]hile the statute may have been primarily focused on physical injury, it refers simply to "injury," which may encompass both physical and emotional injury.[3]

When evidence of negligence is shown, "a relaxed standard of causation applies," and the United States Supreme Court "has interpreted the Act's language 'liberally' in light of its humanitarian purposes" and remedial goal.[4]

Interpreting FELA, the Court in *Gottshall* explained that a plaintiff may pursue a cause of action for negligent infliction of mental distress based on the "zone of danger" test:

> the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.[5]

In its order denying Norfolk Southern's motion for summary judgment, the trial court stated that it "cannot say that [Everett] was not within the zone of danger or that the fears experienced by plaintiff of fire or complete derailment were unreasonable under the circumstances."

Under federal law, "[w]hether an employee's claim satisfies the zone of danger test is a legal question, which [an appellate court]

---

[2] 512 U. S. 532 (114 SC 2396, 129 LE2d 427) (1994).

[3] (Citations omitted.) Id. at 555-556 (III) (C).

[4] (Citation omitted.) *Metro-North Commuter R. Co. v. Buckley*, 521 U. S. 424, 429 (II) (117 SC 2113, 138 LE2d 560) (1997).

[5] (Citation and punctuation omitted.) *Gottshall*, 512 U. S. at 547-548 (II) (B).

review[s] de novo."[6] We will therefore review de novo whether the evidence (construed in favor of Everett) shows that either aspect of the zone of danger test is met.

The first aspect of the zone of danger test is whether Everett sustained a physical impact as a result of Norfolk Southern's negligent conduct. *Nelson v. Metro-North Commuter R.*, supra, held that "an event cannot constitute a physical impact, even if it entails contact, unless it has a physically harmful effect on the body. . . ."[7] Thus, a train engineer who experiences a "jolt of the movement of the cars in the train" caused by the train hitting another railroad car and crushing an employee between those cars "is insufficient."[8]

Here, there was no physically harmful effect on Everett resulting from a physical impact. Everett was "slightly pulled," but this slight sensation of pulling was insufficient to constitute the physical impact required to meet the first aspect of the zone of danger test.

Nevertheless, with respect to the second aspect of the zone of danger test, i.e., whether the event placed him in "immediate risk of physical harm,"[9] Everett did make a showing sufficient to survive summary judgment. The zone of danger inquiry is necessarily fact-based, and there are few, if any, cases directly addressing a scenario similar to the one presented here. In light of the facts of this case, however, we conclude that the trial court correctly ruled that Everett was placed in immediate risk of physical harm by the train derailment and building collision. Everett was the engineer of a six-car train when three of the cars derailed and two cars crashed into a building, activating a fire alarm and sprinklers. There is competent evidence that the derailment and collision were a direct result of misinformation from a co-worker that it was safe for Everett to proceed. This is precisely the type of physical danger posed by railroad work that FELA was intended to address.

For example, in *Lukowski v. CSX Transp.*,[10] the court addressed a train collision with a truck and stated (in dicta) that the plaintiffs *were* placed in immediate risk of physical harm "due to the nature of

---

[6] (Citations omitted.) *Smith v. Union Pacific R. Co.*, 236 F3d 1168, 1170 (I) (10th Cir. 2000). See also *Nelson v. Metro-North Commuter R.*, 235 F3d 101, 113 (II) (D), n. 12 (2d Cir. 2000) ("unlike the question of whether there is negligence or not, the inquiry into the weightiness of the physical risk to which a plaintiff is exposed, would, even in FELA cases, be performed by courts and not primarily by juries").

[7] *Nelson*, 235 F3d at 110 (II) (C). See *Wahlstrom v. Metro-North Commuter R. Co.*, 89 FSupp.2d 506, 516-517 (II) (B) (S.D. N.Y. 2000) ("physical impact . . . applies only to contact that causes immediate traumatic harm") (citation and punctuation omitted).

[8] *Stewart v. Central of Ga. R. Co.*, 87 FSupp.2d 1333, 1337 (III) (A) (S.D. Ga. 2000).

[9] *Gottshall*, 512 U. S. at 548 (II) (B).

[10] 416 F3d 478 (6th Cir. 2005).

the accident."[11] There, the plaintiffs ultimately did not recover because they alleged that their emotional injuries arose from viewing the truck victim's body rather than from fear for their own safety. Here, however, Everett presented evidence that fear for his own safety during and shortly after the incident was the cause of his emotional injuries, which were manifested by negative physical and emotional consequences (depression, weight loss, sleeplessness, panic attacks, and suicidal ideations).[12] Therefore, because of the nature of the incident here, a three-car train derailment and two-car building collision, we conclude that Everett has met his burden under *Gottshall*.

The dissent relies on several cases addressing scenarios not analogous to the facts before us. For example, the dissent cites *Bloom v. Consolidated Rail Corp.*,[13] which held that the engineer of a train is not endangered when a pedestrian is struck, and ignores the patently different risks posed to the engineer by a pedestrian strike compared to a train derailment and building collision. In light of the risks presented by the derailment and collision here, *Bloom* is not instructive.

Similarly, the dissent's reliance on the analysis in *Dziegelewski v. Consolidated Rail Corp.*[14] is misplaced in the present context because that case involved a plaintiff's complaints about an emotional injury due to an unsafe environment manifested by accidents involving other people. There, the court correctly concluded that the plaintiff himself was not in the zone of danger created by those accidents. Here, however, Everett was in a very different position. While Everett did not ultimately suffer a physical injury, he personally drove the train as it derailed, and we cannot conclude as a matter of law that a three-car derailment and building collision presents a merely negligible risk to a·person on a six-car train. The dissent argues that the 300-foot distance separating Everett from the derailment negated any risk to him personally, but again ignores the fact that Everett himself was *on the derailing train as it collided into a building*. That Everett was 300 feet away would be quite persuasive, if not dispositive, if he was merely standing on the ground away

---

[11] Id. at 483 (II) (A).

[12] Everett explained in an affidavit that
I have been a locomotive engineer since March of 1991. I am aware of the risks and dangers of operating railroad equipment, including the risks associated with the derailment of rail cars. Based on my [experience and knowledge of the industry] I know that every derailment . . . exposes . . . the locomotive engineer, to very real, serious and immediate dangers. . . . [A]t the time of the derailment as my train wrecked into the [building], I was sure I was going to die. . . .

[13] 41 F3d 911, 917 (II) (D) (2) (3rd Cir. 1994).

[14] 1995 U. S. Dist. LEXIS 1700, *9 (S.D. N.Y. 1995).

from the tracks safely watching the crash. But because Everett was actually on the train as half of its cars derailed and two cars collided into a building, the 300-foot distance did not remove him from the zone of danger in this case.

Likewise, *K. A. C. v. Benson*,[15] quoted by the dissent, cautioned that it must be "abundantly clear that plaintiff was in grave personal peril for some specifically defined period of time," while addressing a plaintiff fearing the risk of HIV infection despite no actual exposure. The facts of this case demonstrate a vastly different risk from such a scenario, because Everett himself was involved in the derailment and building collision.

A factually closer case, *Stewart v. Central of Ga. R. Co.*,[16] is also inapposite. That case involved a plaintiff sitting in the locomotive of a train while a worker was crushed between a stationary uncoupled car near the end of the train and another car that slowly rolled into the end car. In that case, the court did not address the issue of whether the plaintiff was in imminent danger, because the plaintiff correctly conceded that he was not in danger of being crushed between the car and stationary train (which was bumped by the uncoupled car after the initial impact).[17] Therefore, that case is not instructive here, where the danger arose from the derailment of half of the cars in a train driven by the plaintiff.

We are cognizant of the reality that lawsuits based on emotional injuries are unpredictable and susceptible to fraudulent and trivial claims. However, based on the procedural posture of the case, we must view the evidence in the light most favorable to Everett. Accordingly, we must treat as true Everett's sworn statement that he suffered emotional distress — a type of injury explicitly held to be compensable in *Gottshall*.[18] Although Everett was not physically injured, this is not a bar to recovery. As noted by the United States Supreme Court in *Gotshall*: "We see no reason . . . to allow an employer to escape liability for emotional injury caused by the apprehension of physical impact simply because of the fortuity that the impact did not occur."[19] Therefore, in light of the applicable standard of review on appeal, and in light of the fact that the alleged injury was sustained while driving a six-car train as three cars derailed and two cars collided into a building, we cannot conclude

---

[15] 527 NW2d 553, 558 (a) (Minn. 1995).

[16] 87 FSupp.2d at 1337 (III) (A).

[17] Conflating the two prongs of the zone of danger test, the court in *Stewart* went on to analyze whether the plaintiff suffered a physical impact, despite first concluding that the plaintiff was not in the zone of danger.

[18] See *Gottshall*, 512 U. S. at 550 (III) (A).

[19] Id. at 556 (III) (C).

that Everett was, as a matter of law, outside the zone of danger here.

Finally, we note that some of the language in the trial court's order was not pertinent to the zone of danger test, i.e., that "the fears experienced by plaintiff of fire or complete derailment were [not] *unreasonable.*"[20] But the order was not erroneous in that it altogether failed to apply the zone of danger test. Despite the inartful wording, which was apparently included to accommodate Norfolk Southern's articulation of the test (and which wording does appear in cases applying the test[21]), the trial court's order explicitly and correctly focused on the objective immediate risk of physical harm. Thus, the court's order was not erroneous simply by virtue of application of the wrong test.

*Judgment affirmed. Smith, P. J., Phipps, Adams, and Bernes, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

I respectfully dissent. Because the evidence is undisputed that Everett experienced no physical impact from nor was he in any immediate physical danger from the partial derailment onto level pavement a football field away from him, the trial court erred in denying summary judgment to Norfolk Southern. Accordingly, I would reverse.

Interpreting FELA, the United States Supreme Court has held that a plaintiff may pursue a cause of action for negligent infliction of mental distress based on the "zone of danger" test. *Consolidated Rail Corp. v. Gottshall.*[22]

> [T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.

(Punctuation omitted.) Id. at 547-548 (II) (B).

The majority concedes that the first prong of the test is not met inasmuch as there was no physical impact to Everett. Where the majority errs is determining, as a matter of law, that Everett was in "immediate risk of physical harm" by the event. *Consolidated Rail Corp. v. Gottshall*, supra, 512 U. S. at 548 (II) (B). Even if the event

---

[20] (Emphasis supplied.)

[21] See, e.g., *K. A. C.*, 527 NW2d at 558.

[22] *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 554 (III) (C) (114 SC 2396, 129 LE2d 427) (1994).

occurred temporally very close to the plaintiff, this aspect requires "at the very least" that the risk of physical harm to the plaintiff must have been "more than minimal." *Nelson v. Metro-North Commuter R.*[23] Interpreting Minnesota's zone of danger test (one of the states cited by *Consolidated Rail Corp. v. Gottshall* as following the same zone of danger test — see supra, 512 U. S. at 548, n. 9), the Minnesota Supreme Court stated that it must be "abundantly clear that plaintiff was in grave personal peril for some specifically defined period of time." *K. A. C. v. Benson.*[24] The reviewing court makes this determination based not on the subjective beliefs of the plaintiff, but on the objective facts shown by the evidence. Id. ("[w]hether plaintiff is within a zone of danger is an objective inquiry"). See *James v. Lieb*[25] ("[u]nder the zone-of-danger rule the courts . . . can objectively determine whether plaintiffs were within the zone of danger") (punctuation omitted).

Here, Everett was sitting safely in his locomotive car, was in no danger of derailing, and was never closer than 300 feet, i.e., a football field, to the slow derailment of three cars onto level pavement (and no closer than 450 feet from the Ford building). He was in no immediate risk of physical harm; indeed he was not even close enough to see what was happening ahead of him and was mystified by the events. He could only speculate as to what had occurred, and the slow-moving train was quickly stopped by the automatic brakes and by his activating the emergency brakes. "Because all of the . . . incidents — the derailments and accidents caused by [the negligent conduct] — occurred far away from plaintiff, he was never in the zone of danger." *Dziegelewski v. Consolidated Rail Corp.*[26] Despite his subjective beliefs about possible fires, explosions, and collapsing buildings had the train not stopped, the train in fact did stop, and he was never in any actual grave personal peril or "immediate risk of physical harm." *Consolidated Rail Corp. v. Gottshall*, supra, 512 U. S. at 548 (II) (B). See *Dziegelewski v. Consolidated Rail Corp.*, supra, 1995 U. S. Dist. LEXIS 1700, *8 (the mere potential for worse physical consequences if plaintiff had fallen asleep at the wheel — which he did not — did not place plaintiff in the zone of danger). Here, Everett never came close to the building, and he was never at immediate risk of physical harm from an actual or even a potential building collapse. It is the objective risk of physical harm resulting

---

[23] *Nelson v. Metro-North Commuter R.*, 235 F3d 101, 113 (II) (D) (2d Cir. 2000).

[24] *K. A. C. v. Benson*, 527 NW2d 553, 558 (a) (Minn. 1995).

[25] *James v. Lieb*, 375 NW2d 109, 112 (Neb. 1985).

[26] *Dziegelewski v. Consolidated Rail Corp.*, 1995 U. S. Dist. LEXIS 1700, *9 (S.D. N.Y. 1995).

from what actually happened, rather than reasonable fears of what could have happened, that establishes the "zone of danger" as it is not a "zone of reasonable fear" test. The risks to Everett were at most minimal and therefore never put him in the zone of danger. See *Nelson v. Metro-North Commuter R.*, supra, 235 F3d at 113 (II) (D).

Another case involving an engineer sitting safely in the locomotive of a slowly-moving train case is instructive. In *Bloom v. Consolidated Rail Corp.*,[27] the locomotive engineer sued to recover for his emotional damages caused when his train, which he was operating, struck and killed a pedestrian. Even though the engineer in his locomotive was near the point of impact, the court held that he was not placed in immediate risk of physical harm by the impact with the pedestrian. Id. This case supports the finding that engineers, who sit safely in their locomotive car at the time the accident occurs, cannot be said to have been in any zone of danger unless there is an immediate risk of physical harm.

The United States Supreme Court's decision in *Consolidated Rail Corp. v. Gottshall* points out that the purpose of the strictures of the "zone of danger" test is to minimize fraudulent and trivial claims and to limit "the prospect that allowing such suits can lead to unpredictable and nearly infinite liability for defendants." *Consolidated Rail Corp. v. Gottshall*, supra, 512 U. S. at 551-552 (III) (B). The majority's holding that Everett here was in more than minimal danger of physical harm is inconsistent with this purpose and *Bloom v. Consolidated Rail Corp.*, supra.

Because the evidence — construed in Everett's favor — shows that Everett meets neither aspect of the zone of danger test, his action against Norfolk for negligent infliction of mental distress under FELA should fail. Accordingly, I would reverse the trial court's ruling that denies Norfolk's motion for summary judgment. For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED JULY 7, 2009 —
RECONSIDERATION DENIED JULY 29, 2009 — 

*Weissman, Nowack, Curry & Wilco, William C. Thompson*, for appellant.

---

[27] *Bloom v. Consolidated Rail Corp.*, 41 F3d 911, 917 (II) (D) (2) (3rd Cir. 1994).

*Warshauer, Poe & Thornton, Michael J. Warshauer, Lyle G. Washauer*, for appellee.